UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AYMAN MARJI,

                         Petitioner,                          **09 Civ. 2420 (CS)(PED)**

vs.                                                           **REPORT AND
                                                             RECOMMENDATION**

DAVID ROCK, Superintendent, Great Meadow
Correctional Facility,

                         Respondent.

------------------------------------------------------------X

**TO:    THE HONORABLE CATHY SEIBEL
         UNITED STATES DISTRICT JUDGE**

         Through counsel, Petitioner Ayman Marji ("Petitioner"), incarcerated at the Green Haven

Correctional Facility, brings the instant habeas corpus petition pursuant to 28 U.S.C. § 2254,

challenging his December 8, 2005 conviction from the New York State Supreme Court,

Westchester County. See Habeas Petition ("Pet.") ¶¶ 1-2. Petitioner stands convicted of murder

in the second degree (N.Y. Penal Law § 125.25(1)) and criminal possession of a weapon in the

second degree (N.Y. Penal Law § 265.03(2)). Petitioner was sentenced to an indeterminate term

of imprisonment from twenty (20) years to life for murder in the second degree, and a concurrent

fifteen (15) year term of imprisonment for criminal possession of a weapon in the second degree,

to be followed by a five (5) year period of post-release supervision. Petitioner is currently

serving that sentence.

         Petitioner seeks habeas relief on three (3) separate grounds:

         (1)    that admission of hearsay evidence denied Petitioner his Sixth
                Amendment right to confront witnesses under Crawford v. Washington;

  (2)  that an <u>ex parte</u> communication between the prosecutor and a judicial secretary violated Petitioner's due process rights to be present at a critical stage of trial; and

  (3)  that Petitioner was denied a fair trial by the cumulative effect of prosecutorial overreaching and "expansive rulings" made by the trial court in the prosecution's favor.

Docket # 1 (Petition ("Pet.") ¶ 12.)

  For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of <u>habeas corpus</u> should be **DENIED**.

## I.  <u>BACKGROUND</u>

### A.  <u>The Crime</u>

  On the afternoon of December 18, 2004, Petitioner fatally shot Omar Torres (the "victim") three times – once in the chest and twice in the head – while he was on a sidewalk in Yonkers, New York.  The shooting was a culmination of an ongoing feud between Petitioner and his friends, including Anthony Ribadi ("A. Ribadi") and Joseph Rabadi ("J. Ribadi"), and the victim and his family and friends, including his twin brother, Javier Torres ("J. Torres") and friend Mark Fennell ("Fennell").  Since at least 2001, Petitioner and his associates, and the victim and his associates, repeatedly threatened, harassed, and assaulted each other, sometimes employing the use of weapons.

  On December 17, 2004 – the night before the murder – from a car driven by Fennell, the victim fired four shots in the direction of Petitioner, J. Ribadi, and Petitioner's cousin, Zeyed Marji ("Z. Marji").  Although one of the bullets grazed Z. Marji, he was not seriously injured. Later that night, Petitioner and J. Ribadi approached Fennell's girlfriend and demanded to know where they could find the victim and Fennell.

The next day, the victim was fatally shot on a sidewalk in Yonkers, near a gas station. Crystal Campbell ("Campbell") witnessed the shooting, and saw the shooter as he fled past the gas station. Campbell reported the shooting to 911, and gave a description of the shooter, including a description of his clothing and facial characteristics.

Detectives Anthony Chiarella ("Chiarella") and George Piedade ("Piedade") (collectively, the "detectives") were assigned to the case. During the course of their investigation, the detectives interviewed over fifty (50) individuals, including Campbell and Raymond Hattar ("Hattar"), a mechanic on duty at the gas station at the time of the shooting. Hattar told the detectives that after hearing the gun shots, he saw Petitioner fleeing the scene.[1]

On January 20, 2005, the detectives interviewed Petitioner and a search warrant for Petitioner's home was subsequently issued. That search resulted in recovery of clothing that matched the description given by Campbell to the 911 dispatch. On the same day, Campbell picked Petitioner out of a corporeal line-up and identified him as the shooter. Hattar also picked Petitioner out of a photographic line-up as the man he saw fleeing the scene of the crime. Petitioner was subsequently arrested and charged with murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.

### B.   The Trial

Prior to trial, the prosecution requested leave to adduce evidence regarding the ongoing feud between Petitioner and his associates and the victim and his associates. The court

---

[1] Hattar initially told police that he had not seen anything. At trial, Hattar explained that he did not initially cooperate with police because, in his words, "I wanted to keep myself as far away as I can from this." Trial Tr. at 389; see also Trial Tr. at 331, 557-58, 655.

conducted a <u>Ventimiglia</u> hearing regarding the evidence in question,[2] and determined that some of the "prior bad acts" at issue were admissible for the purpose of demonstrating motive and intent, and for the purpose of "providing relevant background material to enable the jury to understand the hostile nature of the relationship between petitioner and the victim." Hearing Tr., at 190, 194. The court announced that any such evidence would be admitted subject to a limiting instruction that it could not be considered by the jury as demonstrating a criminal propensity on the part of the Petitioner. Subject to that limitation, the court permitted the prosecution to elicit evidence regarding the following incidents:

- On the night before the murder, the victim fired gunshots into a crowd of people that included Petitioner and J. Ribadi, striking Petitioner's cousin, Z. Marji.

- In the year prior to the shooting, while in Petitioner's car, J. Ribadi and A. Ribadi repeatedly drove by and threatened the victim and his brother.

- During the summer before the shooting, Petitioner and others attempted to "jump" the victim, during which time Petitioner lunged at the victim with a knife. When J. Torres interceded to help the victim, Petitioner cut him with the knife.

- In the fall before the shooting, while riding in a car driven by Petitioner, J. Ribadi pointed a gun at J. Torres.

The court ruled that Petitioner's affiliation with a gang known as the "Arabian Knights" could not be admitted at trial, nor could certain prior bad acts from 2001 because they were too remote and did not involve Petitioner.

On the day before trial, the assistant district attorney interviewed J. Torres regarding the incident in which J. Ribadi pointed a gun at him. J. Torres told the assistant district attorney that, contrary to the prosecution's representation during the <u>Ventimiglia</u> hearing, the incident actually

---

[2] "[A] Ventimiglia hearing is held to determine whether evidence of uncharged crimes is admissible as direct evidence." <u>Jones v. Artuz</u>, 96 Fed. Appx. 742, 743 (2d Cir. 2004).

occurred two years (and not two months) prior to the shooting. After learning this information, the assistant district attorney called the chambers of the trial judge and spoke with his law clerk. During that conversation, the assistant district attorney corrected her previous misrepresentation and inquired "whether or not [she] needed to anything about that." Trial Tr. at 62. The law clerk informed the assistant district attorney that he did not believe the newly disclosed date would alter the court's ruling as to admissibility of the evidence in question.

During her opening statement, the assistant district attorney stated that the incident in question occurred "two summers before the homicide." Trial Tr. at 29. Petitioner's counsel, who had not previously been made aware of the inconsistency regarding the date of the incident, moved for a mistrial on the basis that the prosecution had attempted to "mislead the court" during the Ventimiglia hearing. After indicating that the timing of the incident in question would not have influenced his ruling, the judge denied Petitioner's motion for a mistrial.[3]

During the defense opening statement, Petitioner's counsel previewed one of the legal theories he intended to develop at trial: that instead of conducting a thorough and good faith investigation into the murder, the police summarily concluded at the outset that Petitioner was guilty and tailored their "investigation" to gather evidence in support of that conclusion. In response, the prosecution requested permission "to inquire of the police officers and the detectives in this case how their suspects were developed, what they did with that information, how they included or excluded persons based on police investigation" by eliciting what "might be deemed hearsay under certain circumstances" but which would be offered only to counter defense accusations that "there was no investigation, that [the police] acted in bad faith, that this

---

[3] The trial judge indicated on the record that he "had no communication with [his] law secretary as to that issue" and that he "found out for the first time in hearing [the prosecution's] opening statement that it was the summer before." Trial Tr. at 90.

5

was basically a frame-up." Trial Tr. at 226-27. The court granted the prosecution's open-ended

application on the basis that "[s]uch evidence constitutes a fair response to petitioner's claims

concerning the biased nature of the investigation conducted with respect to the case." Trial Tr. at

309. The court also held that the evidence in question, which would be adduced through the

testimony of the detectives, "would not be admitted for the truth of the matters asserted therein,

but rather would be admitted for the purpose of demonstrating the effect that this information

had upon the detectives in the course of their continuing investigation, and the court will give a

limiting instruction to that effect." Trial Tr. at 309-10.

Pursuant to the court's ruling, the prosecution adduced evidence regarding the

investigation through the detectives, which included testimony regarding statements given to

them by third-parties, most of whom did not testify at trial. This testimony established the

following (collectively, the "Investigation Evidence"):

- Although the investigation initially focused on J. Rabadi, he was eliminated as a suspect following confirmation of an alibi.

- Campbell was shown a photographic line-up including J. Rabadi but not Petitioner, and Campbell indicated that the shooter was not in the line-up.

- Campbell was shown another photographic line-up including A. Rabadi but not Petitioner, and Campbell again indicated that the shooter was not in the line-up.

- The Rabadi brothers indicated that the victim had committed a drive-by shooting on December 17, in which he fired shots at Petitioner and J. Rabadi, and struck Petitioner's cousin, Z. Marji.

- Fennell's girlfriend indicated that Petitioner and J. Rabadi were looking for the victim following the drive-by shooting on the evening of December 17.

- A detective not assigned to the case, Detective Montero, informed the detectives that Hattar had indicated that Petitioner was the shooter (the "Montero Statement").

The court also permitted the prosecution to introduce Polaroid photographs of various

individuals interviewed by the detectives during the course of their investigation.

6

Although Petitioner's counsel objected to much of the Investigation Evidence on hearsay grounds, he objected in constitutional terms (on confrontation grounds) only once, with respect to the Montero Statement.[4]   Petitioner's counsel made this objection after the court had already made its general ruling regarding the admissibility of the Investigation Evidence, and after much of the Investigation Evidence had already been admitted into evidence.

On August 9, 2005, the jury found Petitioner guilty of murder in the second degree and criminal possession in the second degree, and acquitted him on the charge of criminal possession of a weapon in the third degree.   After entry of the judgment, but prior to sentencing, Petitioner's counsel filed a motion to set aside the verdict and for new trial pursuant to CPL §§ 330.30, 330.40, and 330.50 on the basis of various alleged trial errors.   MOL, Ex. 1 (CPL § 330 Motion).[5]   In an order dated December 6, 2005, the court denied Petitioner's CPL § 330 motion in its entirety.   MOL, Ex. 2 (Order of December 6, 2005).   On December 8, 2005, Petitioner was sentenced as noted above.

---

[4] Petitioner's counsel objected as follows: "This is exactly the reason I objected. What they're able to do is have someone come in, testify that someone else told them someone else said something, who I could never cross-examine. This totally denies my client's right of confrontation. It enables them to prove their case without a witness. It's totally improper, and that was my concern when you said they can go into hearsay for investigative purposes." Trial Tr. at 444.

[5] In the CPL § 330 motion, Petitioner specifically argued: (1) that he was denied the opportunity to be present at a material stage of the trial when the assistant district attorney had an ex parte telephone conversation with the judge's law clerk; (2) that the court erred by admitting evidence of prior bad acts directed at people other than the victim; (3) that it was error to admit evidence of prior bad acts as "background information"; (4) that the court erred by admitting "negative identification information" (i.e., Campbell's review of photographic line-ups not including Petitioner, and her statement that the shooter was not contained in those line-ups); (5) improper bolstering of witness testimony; (6) admission of evidence that was unduly prejudicial; (7) that the court erred by admitting individual photographs of people interviewed by the detectives during the course of their investigation; and (8) admission of hearsay evidence violated Petitioner's right to confrontation.

7

### C.    <u>Post-Trial Proceedings</u>

### 1.    <u>State Court Proceedings</u>

Through counsel, Petitioner filed a timely appeal in the Second Department of the New York Supreme Court's Appellate Division ("Appellate Division").  On direct appeal, Petitioner asserted the following grounds for relief:

(1)    that he was denied the opportunity to be present at a material stage of the trial when the assistant district attorney had an <u>ex parte</u> telephone conversation with the judge's law clerk;

(2)    that the court erred by admitting evidence of prior bad acts directed at people other than the victim;

(3)    that it was error to admit evidence of prior bad acts as "background information";

(4)    that the court erred by admitting "negative identification information" under an improper rationale;

(5)    improper bolstering of witness testimony;

(6)    admission of evidence that was unduly prejudicial;

(7)    that the court erred by admitting individual photographs of people interviewed by the detectives during the course of their investigation; and

(8)    cumulative effect of trial errors.

MOL, Ex. 3 (Appellate Brief).

Through counsel, Petitioner filed a supplemental appellate brief in which he asserted that the admission of hearsay testimony – for the purpose of refuting Petitioner's claim that the police investigation was not conducted in good faith – violated Petitioner's confrontation rights under the Sixth Amendment to the United States Constitution.  MOL, Ex. 6 (Supplemental Appellate Brief).  On September 11, 2007, the Appellate Division upheld Petitioner's conviction and sentence in all respects.  <u>People v. Marji</u>, 841 N.Y.S.2d 361 (N.Y. App. Div. 2d Dep't 2007).  As to Petitioner's claim regarding the admission of prior bad act evidence, the court concluded that

the evidence "was properly admitted as relevant background material to enable the jury to understand the defendant's relationship with the victim and to establish the defendant's motive and intent in the commission of the charged crimes." Id. at 362. As to Petitioner's claim regarding the admission of negative identification information, the court concluded that the evidence was properly admitted because it was "relevant to the issue of the identifying witness's reliability, and its probative value was not outweighed by any potential for prejudice." Id. at 363. The court also found that Petitioner's claim of improper bolstering, along with his claim under the Confrontation Clause, were unpreserved for appellate review. Id. (Petitioner's bolstering claim "not preserved for appellate review" and Petitioner's confrontation claim "is also unpreserved for appellate review" pursuant to CPL § 470.05). The court concluded that "defendant's remaining contentions are without merit." Id.

Petitioner sought leave to appeal that decision to the New York Court of Appeals, and on December 26, 2007, the Court of Appeals denied leave. People v. Marji, 880 N.E.2d 881 (N.Y. 2007).

## 2.   **Federal Court Proceedings**

On March 17, 2009, through counsel, Petitioner filed the instant habeas petition in this Court. Docket # 1 (Petition). In the petition, Petitioner asserts three (3) separate grounds for relief:

(1)    that admission of hearsay evidence denied Petitioner his Sixth Amendment right to confront witnesses under Crawford v. Washington;

(2)    that the ex parte communication between the prosecutor and the judge's law clerk violated Petitioner's due process rights to be present at a critical stage of trial; and

(3)    that Petitioner was denied a fair trial by the cumulative effect of prosecutorial overreaching and "expansive rulings" made by the trial court in the prosecution's favor.

9

Pet. ¶ 12.

Respondent filed a response on May 29, 2009, in which it argued: (1) that Petitioner's confrontation claim is procedurally barred and in any event fails on the merits; (2) that Petitioner did not have a constitutional right to be present during the ex parte phone call between the prosecutor and the judge's law clerk, and that any error stemming from that conversation was harmless; and (3) that Petitioner fails to state a basis for federal habeas relief with respect to his claim of cumulative trial errors. Docket ## 5-6 (Opp'n Aff. and Memorandum of Law). Petitioner filed a reply on June 10, 2009. Docket # 7 (Reply).

## II.   DISCUSSION

### A.   Applicable Law

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

#### 1.   Timeliness Requirement

A federal habeas corpus petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1).

10

Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable

11

tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

    2.  Exhaustion Requirement

  A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

  To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.    Procedural Default

Even where an exhausted and timely habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

4.    AEDPA Standard of Review

Before a federal court can determine whether a petitioner is entitled to federal habeas

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal

habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more

exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed

after AEDPA became effective, federal courts must apply the following standard to cases in

which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
>        application of, clearly established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of
>        the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when

the state court has both adjudicated the federal claim "on the merits," and reduced its disposition

to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at

a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]

decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of

Supreme Court precedent if the state court "identifies the correct governing legal rule from the

Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's

case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B.    Confrontation Clause

Petitioner first argues that the trial court violated his confrontation rights by admitting the Investigation Evidence. See Pet. ¶ 12. Respondent argues that this claim is procedurally barred and in any event fails on the merits. Respondent is correct.

The Sixth Amendment guarantees a defendant the right to be confronted by the witnesses against him, and testimonial statements may be introduced by third-party witnesses only when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant regarding the statement. Crawford v. Washington, 541 U.S. 36, 68 (2004); United States v. McClain, 377 F.3d 219, 221 (2d Cir. 2004). However, New York's contemporaneous objection rule, codified at CPL § 470.05(2), is an independent and adequate state procedural bar for Confrontation Clause objections. See, e.g., Stewart v. Greene, 05 Civ. 0566 (WHP)(THK), 2009 U.S. Dist. LEXIS 108685, *4-6 (S.D.N.Y. Nov. 19, 2009); Garcia v. Lewis, 188 F.3d 71, 77-78 (2d Cir. 1999). Moreover, under New York law, invocation of a hearsay objection is insufficient to preserve a Confrontation Clause objection. See, e.g., Canemo v. Dennison, No. 06 Civ. 2078, 2010 U.S. Dist. LEXIS 40013, *4 (S.D.N.Y. April 23, 2010).

Here, in all but one instance, Petitioner's trial counsel objected to the Investigation Evidence solely on hearsay grounds. To the extent his counsel objected only on hearsay grounds, Petitioner's confrontation claim was not properly preserved under New York law. CPL § 470.05(2). When the Appellate Division concluded that Petitioner's confrontation claim was "unpreserved for appellate review" pursuant to CPL § 470.05, that determination constituted an independent and adequate state law basis for its decision. Coleman, 501 U.S. at 749-50. Accordingly, subject to the one exception noted below, this Court is precluded from conducting habeas review of Petitioner's confrontation claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. Because Petitioner has made no attempt to make any such showing, his confrontation claim is – subject to the one exception noted below – procedurally barred.

As noted above, however, Petitioner's trial counsel did object on confrontation grounds with respect to one specific piece of Investigation Evidence – the Montero Statement – by timely asserting that admission of this evidence "totally denies my client's right of confrontation." Trial Tr. at 444. Notwithstanding this objection, the Appellate Division concluded that Petitioner's entire confrontation claim was unpreserved for appellate review pursuant to CPL § 470.05. Marji, 841 N.Y.S.2d at 363. In determining whether that ruling procedurally bars Petitioner from seeking habeas relief with respect to the Montero Statement, I must determine whether the Appellate Division's application of CPL § 470.05 with respect to the Montero Statement constitutes an adequate and independent state law basis for its decision. Coleman, 501 U.S. at 749-50. For the reasons that follow, I conclude that it does not.

17

The adequacy of an alleged state procedural bar is itself a question of federal law, <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002); <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." <u>Garcia</u>, 188 F.3d at 77 (internal citation omitted). The adequacy of a state procedural bar is reviewed de novo, <u>Monroe v. Kuhlman</u>, 433 F.3d 136, 240 (2d Cir. 2006), and the state bears the burden of proving the adequacy of the state procedural ground. <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003).

Federal courts examine whether a rule is "firmly established and regularly followed" by examining "the specific circumstances presented in a case." <u>Monroe</u>, 433 F.3d at 241 (citations and quotation marks omitted). Even if a rule is considered to be established as a general matter, "such a rule considered in the specific circumstances of a case might be inadequate to preclude federal habeas review." <u>Id.</u> If the state court "misapplied" the rule "in this case in particular," then the rule is inadequate to bar federal review. <u>Cotto</u>, 331 F.3d at 240.

Here, Petitioner's trial counsel objected to the Montero Statement, at the time of the testimony in question, on the ground that its admission into evidence "totally denies my client's right of confrontation." Trial Tr. at 444. Although there is no question that CPL § 470.05(2) is "firmly established and regularly followed" by New York courts, the Appellate Division "misapplied" that rule here since Petitioner's counsel asserted a timely objection on the specific grounds for which he later sought appellate review. <u>Cotto</u>, 331 F.3d at 240. Indeed, New York courts have routinely concluded that CPL § 470.05(2) is satisfied so long as a timely and specific objection, such as the one at issue here, is raised at trial, thereby "give[ing] the trial court a clear opportunity to correct any error." <u>Cotto</u>, 331 F.3d at 243; <u>see also</u> <u>People v. Alfaro</u>, 489 N.E.2d 1280, 1281 (N.Y. 1985) ("As a general rule alleged errors must be raised at a time when they can

18

be corrected at trial."); People v. Brister, 149 A.D.2d 520, 521 (N.Y. App. Div. 2d Dep't 1989)

(confrontation claim "preserved for appellate review since defense counsel moved for [relief] at

the first available opportunity"); People v. Rodriguez, 850 N.Y.S.2d 26, 27 (N.Y. App. Div. 1st

Dep't 2008) ("in order to preserve [confrontation] issue, defendant was obligated to make this

objection before the trial court"); cf. People v. Kello, 746 N.E.2d 166, 168 (N.Y. 2001)

(confrontation claim not preserved due to defense counsel's "failure to raise a Confrontation

Clause objection").  Because Petitioner asserted such an objection here, he complied with CPL §

470.05(2), and the Appellate Division's finding that Petitioner did not comply with CPL §

470.05 with respect to the Montero Statement is not an adequate state procedural bar for

purposes of federal habeas review.

The Court therefore turns to the merits of Petitioner's confrontation claim, insofar as it

relates to the Montero Statement.  Although the Confrontation Clause prohibits the use of

testimonial statements made by third-party witnesses unless the declarant is unavailable and the

defendant had a prior opportunity to cross-examine the declarant regarding the statement in

question, Crawford, 541 U.S. at 68, the Confrontation Clause "does not bar the use of testimonial

statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9

(citing Tennessee v. Street, 471 U.S. 409, 414 (1985)).  Thus, "[i]f a statement is offered for a

purpose other than proving the truth of the matter asserted, such as to explain actions taken as a

result of the statement or to show how an investigation developed, its admission violates neither

the hearsay rule nor the *Confrontation Clause*." Rolland v. Greiner, 02 Civ. 8403 (GBD)

(MHD), 2006 U.S. Dist. LEXIS 17034, *7 (S.D.N.Y. March 27, 2006); cf. United States v.

Gilliam, 994 F.2d 97, 103 (2d Cir. 1993) (finding no error stemming from trial court's admission

of statement made to police by an anonymous caller where evidence was intended "to establish

19

the reasons for the return of the officers to the scene, not to prove the truth of the caller's" statement); United States v. Slaughter, 386 F.3d 401, 403 (2d Cir. 2004) (finding no error with respect to admission of "purportedly hearsay testimony" where it "was proffered for a legitimate purpose – namely, explaining how the officer came to find the weapon").

Numerous courts in this Circuit, confronted with facts and circumstances similar to those at issue here, have found no violation of the Confrontation Clause. For example, the defendant in Rolland – like Petitioner here – argued at trial that he was arrested as the result of a "police conspiracy" intended to "frame" him. Roland, 02 Civ. 8403 (GBD) (MHD), 2006 U.S. Dist. LEXIS 17034, *8, 20, 34, 51. In response to that allegation, similar to the course of events at issue in this case, "the trial court admitted the limited testimony of the detectives 'in order to explain what led the detectives to interview defendant five years after the crime occurred, since the defense opened the door to admission of the statement by way of its allegation of a police conspiracy." Id. at *7. "Because the statements were offered for this limited purpose," the court found that "their admission does not violate petitioner's right 'to be confronted with the witnesses against him.'" Id.

Similarly, in the case of Buenos Ruiz v. Fischer, 06 CV 0301 (NGG), 2007 U.S. Dist. LEXIS 34376 (E.D.N.Y. May 10, 2007), a detective interviewed a third-party witness during the course of his investigation, and the third-party gave the detective a photograph of the petitioner. In explaining the progress of his investigation at trial, and how he specifically came to arrest the petitioner, the detective testified regarding his receipt of the petitioner's photograph from the third-party. The petitioner argued that the detective's testimony regarding the photograph "implied that [the non-testifying third-party] had implicated Petitioner in the crime" in violation of the Confrontation Clause. The Buenos Ruiz court rejected the petitioner's confrontation

argument because the evidence in question, like the Montero Statement at issue here, "was admitted to explain how the investigation of the Petitioner progressed," and not for the truth of the matter asserted. Id. at *10.

The same result follows here for the same reason. As the Appellate Division observed, the prosecution was permitted to question the detectives regarding information they obtained from other people – including Montero – "for the nonhearsay purpose of rebutting the defense argument that the police had conducted a biased and incompetent investigation of the charged crimes, which opened the door to such testimony." Marji, 841 N.Y.S.2d at 363. Although the Montero Statement certainly would constitute inadmissible hearsay if offered for its truth, the "nonhearsay purpose" for which it was admitted here "violates neither the hearsay rule nor the *Confrontation Clause*." Rolland, 02 Civ. 8403 (GBD) (MHD), 2006 U.S. Dist. LEXIS 17034, *7; see also Buenos Ruiz, 06 CV 0301 (NGG), 2007 U.S. Dist. LEXIS 34376, at *10. As such, the trial court's admission of the Montero Statement into evidence for the limited purpose of rebutting Petitioner's claim of a bad faith police investigation, and subject to the trial court's limiting instruction, cannot form the basis for federal habeas relief.

## C.    Right to be Present During Critical Phase of Trial

Petitioner next argues that the ex parte phone call between the assistant district attorney and the trial judge's law clerk resulted in a denial of his due process right to be present during a critical phase of the trial. Pet. ¶ 12. Respondent argues that Petitioner did not have a constitutional right to be present during the phone call at issue, and that any error stemming from that conversation was harmless. The Court agrees with Respondent.

"The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his

own person whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge.'" Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1934)). "Although the Court has emphasized that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,' due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" Id. (quoting Snyder, 291 U.S. at 108). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Id.

Petitioner's due process claim must fail because the ex parte communication at issue was not "critical" to the outcome of the case. Instead, the ex parte communication was merely a short telephone call, outside the context of court proceedings, made by a prosecutor to the judge's law clerk for the purpose of correcting the date of the "prior bad act" in question – a correction that inured to the benefit of Petitioner. The prosecutor had no direct dealing with the judge during the call, nor did she request or receive any ruling.

Supreme Court precedent requires a criminal defendant's presence "'to the extent that a fair and just *hearing* would be thwarted by his absence.'" Stincer, 482 U.S. at 745 (emphasis added). The brief ex parte phone call at issue here, the existence of which remained unknown to the trial judge until after completion of opening statements, clearly was not a "hearing" – let alone a "critical" hearing – and Petitioner has made no showing as to how his absence from that phone call "thwarted" his constitutional rights in any way. Although Petitioner surmises that, had he been able to participate in the ex parte phone call, his counsel could have re-opened the Ventimiglia hearing and possibly prevailed in excluding the "prior bad act" at issue, Pet., MOL

22

at 32, this surmise falls well short of demonstrating an injury cognizable on federal habeas review. Indeed, after learning of the information that was the subject of the call, the trial judge concluded that this information would not have altered his ruling. Trial Tr. at 62. Thus, even if Petitioner had participated in the ex parte phone call, it is clear that his participation would have been "useless" – precisely the type of "proceeding" for which a criminal defendant does not have a constitutional right to attend. Stincer, 482 U.S. at 745.

Moreover, in finding Petitioner's claim to be "without merit," the Appellate Division implicitly found that the ex parte communication at issue did not constitute a "critical" stage of the trial. Petitioner has not demonstrated that this determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). As such, his habeas claim should be denied.[6]

---

[6] Petitioner also argues that by taking the prosecutor's phone call and indicating that he did not believe the newly revealed date would alter the court's conclusion, the law clerk "assum[ed] a duty of the court by arrogating to himself the responsibility of making a ruling within the context of the *Molineaux / Ventimiglia* hearing." Pet., MOL, at 31. This argument was never presented to the Appellate Division, and cannot be the subject of a subsequent appeal. 22 NYCRR § 500.20(a)(2). Moreover, CPL §§ 440.10(2) and 440.20(2) bar collateral review of this claim because it could have been raised on direct appeal. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004), cert. denied, 543 U.S. 1058 (2005). As such this claim is "'deemed exhausted' and can be considered in a federal habeas corpus proceeding" only "if the petitioner can show 'cause' and 'prejudice' for the failure to raise the issues in the state courts," Loving v. O'Keefe, 960 F. Supp. 46, 48 (S.D.N.Y. 1997), or if he can show that a "fundamental miscarriage of justice" will result unless this Court reviews the claim on the merits. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because Petitioner has made no attempt to demonstrate cause or prejudice for his procedural default, or that a fundamental miscarriage of justice has occurred, his claim regarding the judge's law clerk cannot form the basis for federal habeas relief.

### D.   **Cumulative Trial Errors**

Finally, Petitioner argues that he was denied due process as a result of the cumulative effect of various trial errors.  Pet. ¶ 12.  Respondent argues that these alleged errors do not establish a basis for federal <u>habeas</u> relief.  Respondent is correct.

Petitioner specifically claims that the following alleged trial errors, taken together, deprived him the due process right to a fundamentally fair trial:

(1)   Violation of Petitioner's confrontation rights through admission of hearsay evidence (<u>see</u> <u>supra</u>, Section II.D);

(2)   Violation of Petitioner's right to be present during a "critical" stage of the trial (<u>see</u> <u>supra</u>, Section II.E);

(3)   Violation of state law through admission of negative identification evidence (i.e., testimony that the detectives showed Campbell photographic line-ups that did not include Petitioner);

(4)   Violation of state law through admission of prior bad act evidence;

(5)   Violation of state law through admission of Polaroid photographs of individuals interviewed by the detectives during the course of their investigation; and

(6)   Violation of state law through admission of a crime scene videotape.

<u>See</u> Pet., MOL at 35-44.

Although claims relating to two of these alleged errors – numbers (1) and (2) – were presented to the state court in constitutional terms, Petitioner did not argue in state court that the cumulative effect of those errors, together with the alleged violations of state law, constituted an independent basis for any relief, let alone a violation of his rights under the United States Constitution.  Instead, Petitioner merely argued on direct appeal that that the cumulative effect of "prejudicial errors in the trial" was "not harmless" under state law.  <u>See</u> MOL, Ex. 3 (Appellate Brief) at 59-63.

Cumulative error claims – like other claims – must be fairly presented to all appropriate state courts before habeas review can proceed. See Wooten v. Kirkland, 540 F.3d 1019, 1025-26 (9th Cir. 2008). Here, because Petitioner has not presented the state courts with this argument in constitutional terms, it remains unexhausted. Baldwin, 541 U.S. at 29. Petitioner cannot again seek leave to appeal to the Court of Appeals because he has already used the one application allowed under 22 NYCRR § 500.20(a)(2). Moreover, CPL §§ 440.10(2) and 440.20(2) bar additional collateral review of Petitioner's "cumulative trial error" claim because it could have been raised on direct appeal. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004), cert. denied, 543 U.S. 1058 (2005).

Accordingly, Petitioner's "cumulative trial error" claim is "'deemed exhausted' and can be considered in a federal habeas corpus proceeding" only "if the petitioner can show 'cause' and 'prejudice' for the failure to raise the issues in the state courts," Loving v. O'Keefe, 960 F. Supp. 46, 48 (S.D.N.Y. 1997), or if he can show that a "fundamental miscarriage of justice" will result unless this Court reviews the claim on the merits. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because Petitioner has made no attempt to demonstrate cause or prejudice for his procedural default, or that a fundamental miscarriage of justice has occurred, his "cumulative trial error" claim cannot form the basis for federal habeas relief.

## III.   **Conclusion**

For the reasons set forth above, I respectfully recommend that Petitioner's habeas petition be **DENIED** in its entirety.

25

**IV.**    **Notice**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation. Fed. R. Civ. P. 6(a). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.


Dated:   July 19, 2011
         White Plains, N.Y.


Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE

26